**PRESTAGE FARMS, INC., Plaintiff,**

v.

**The BOARD OF SUPERVISORS OF NOXUBEE COUNTY, MISSISSIPPI, The Board of Supervisors of Chickasaw County, Mississippi, The Board of Supervisors of Monroe County, Mississippi, Defendants.**

**and**

**William B. HILL and Samuel T. Gore, Plaintiffs,**

v.

**The BOARD OF SUPERVISORS OF CHICKASAW COUNTY, MISSISSIPPI, Defendant.**

**Nos. 1:98CV190–D–D, 1:98CV216–D–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Oct. 6, 1998.

Anna Catherine Pipkin, Tupelo, MS, for Prestage Farms, Inc., William B. Hill, Samuel T. Gore.

Tommie S. Cardin, Jackson, MS, for Noxubee and Chickasaw Counties.

John M. Creekmore, Amory, MS, for Monroe County.

## OPINION

DAVIDSON, District Judge.

Since 1985, concentrated swine feeding operations have been regulated by the Mississippi Department of Environmental Quality through the Mississippi Commission on Environmental Quality. Miss.Code Ann. § 49–17–29 basically requires anyone involved in an activity that pollutes the air or water to get a permit from the Mississippi Environmental Quality Permit Board. In 1998, Senate Bill 2895 was passed and amended Miss. Code Ann. § 49–17–29. The bill stated in part that concentrated animal feeding operations may be exempted from the permit requirement. "However, no new or existing applications relating to swine concentrated animal feeding operations within a county [would] be exempted from regulations and ordinances which [had] been duly passed by the county's board of supervisors and which [were] in force on June 1, 1998." The bill neither increased nor decreased the powers of the boards of supervisors, it merely allowed them to act within their powers that existed prior to June 1, 1998. The boards of supervisors of various counties passed ordinances which regulate concentrated swine feeding operations. The plaintiffs are seeking declaratory and injunctive relief asserting that the ordinances are preempted by state law and violate their equal protection and substantive due process rights. This cause comes before the court upon Plaintiffs' motions for preliminary and permanent injunction. Upon duly considering the aforesaid motions, the court issues a preliminary injunction against the boards of supervisors of Noxubee County, Chickasaw County, and Monroe County.

### I. Abstention

Prestage Farms, Inc., filed bills of exceptions against the Boards of Supervisors of Chickasaw and Monroe counties in the Circuit Courts of their respective counties appealing the passing of the ordinances at issue. In their briefs to the court, these Defendants asserted that this court should abstain from ruling on the ordinances of these two counties due to the pending state appeals. At the hearing for the preliminary injunction, Prestage Farms informed the court that it had voluntarily dismissed the state court appeals. However, Chickasaw and Monroe counties argued that, pursuant to Rule 41 of the Mississippi Rules of Civil Procedure, the Plaintiff Prestage Farms could not voluntarily dismiss the appeals since responsive pleadings had been filed. The Defendants then reasserted their arguments under the doctrines of *Younger* abstention and *Burford* abstention.

The court will not determine the status of the state court appeals since that is an issue to be determined by the Chickasaw County Circuit Court and the Monroe County Circuit Court. Whether the appeals are dismissed, which would make the abstention issue moot, or whether those appeals are still pending, this court will not abstain from ruling on the constitutionality of these ordinances.

In *Younger v. Harris*, the defendant in a state court criminal prosecution filed suit in federal court to enjoin the state court proceedings against him. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* and its progeny have held that a federal court should abstain when a state court defendant seeks injunctive or declaratory relief in federal court that would hinder the state

court proceeding. In the case *sub judice,* the plaintiff in the state court proceeding is also the plaintiff in the federal court proceeding. These facts are not of the type that come under the doctrine of *Younger* abstention; these facts are more akin to *Colorado River* abstention. Under *Colorado River* abstention, federal courts *may stay* a case involving a question of federal law where a concurrent state action is pending in which the identical issues are raised. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Within its discretionary power, the court considers the following factors in determining whether or not to abstain:

(1) Whether the concurrent litigation will cause piecemeal litigation, a waste of judicial resources, inconvenience to the parties, and risk of conflicting results;

(2) The inconvenience of the federal forum;

(3) The order in which jurisdiction was obtained by the concurrent forums;

(4) Whether state or federal law controls; and

(5) Whether the state proceeding is adequate to protect the parties' rights.

*See Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236; *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983). The Chickasaw and Monroe County ordinances are identical. Therefore, the court can address the constitutionality of these ordinances and the rights of the parties in a uniform manner that will be as convenient to the parties as any litigation allows. Although the court recognizes that the state court obtained jurisdiction first, the issues in the state and federal actions are not identical as required by the doctrine of *Colorado River* abstention. After considering the above stated factors, the court has, within its discretionary power, decided not to abstain.

Under *Burford* abstention, a federal court *may abstain* as a matter of comity if federal adjudication would be disruptive of state efforts to establish a coherent policy with respect to the matter at issue. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed 1424 (1943). The Fifth Circuit has held that *Burford* abstention is appropriate where

(1) there are questions of state law bearing on policy problems of substantial public importance when the importance of the state law questions transcend a result in the particular case at bar, and (2) when the exercise of federal jurisdiction over the question in the case would disrupt state efforts in establishing a coherent policy with respect to a matter of substantial public concern. *Barnhardt Marine, Ins. v. New England Intern. Sur. Of America Inc.,* 961 F.2d 529, 531 (5th Cir.1992). The court recognizes that the case *sub judice* involves state statutes that have been established to provide a coherent policy regarding regulation of concentrated swine feeding operations. However, such statutes, although interpreted differently by the parties, are not the focal issue of this lawsuit. The constitutionality of county ordinances is the focal issue and is best determined in this federal forum. Accordingly, this court will not abstain from ruling on this cause.

## II. Standing

Prestage Farms does not own property in Noxubee County nor are there actual signed contracts between Prestage Farms and permit applicants. The Defendant Board of Supervisors of Noxubee County, Mississippi, avers that the absence of these two interests leaves Plaintiff Prestage Farms, Inc., without standing to seek declaratory or injunctive relief in regard to the Noxubee County ordinance. The court finds that this argument is not well taken. A plaintiff seeking declaratory or injunctive relief must show there is a likelihood of injury in the future. *City of Los Angeles v. Lyons,* 461 U.S. 95, 104, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983). Prestage Farms has several letters of intent with property owners in Noxubee County who are permit applicants. From the pleadings and testimony at the preliminary injunction hearing, the court concludes that based on its efforts made to enter into business relations in Noxubee County, Prestage Farms has shown it has a "likelihood of injury in the future" in Noxubee County. *See infra* Section III, A, 2. Standing is not challenged in the claims against the Boards of Supervisors of Chickasaw or Monroe Counties.

### III. Preliminary Injunction

In order for a court to grant a preliminary injunction, the plaintiff must establish the following:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied;

(3) that the threatened injury to the plaintiff outweighs any damage that an injunction might cause the defendant; and

(4) that granting the injunction will not disserve the public interest.

*Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974).

### A. Noxubee County Ordinance

#### 1. A Substantial Likelihood of Success on the Merits

The Mississippi Constitution grants county boards of supervisors full jurisdiction over roads, ferries, and bridges. Miss. Const. Art. 6 § 170. Additionally, the boards of supervisors may "perform other duties as may be required by law." *Id.* Therefore, boards of supervisors need legislative authority to assert power over anything or anyone other than "roads, ferries, and bridges." Such authority is given in the "Home Rule Statute," Miss.Code. Ann. § 19–3–40. This statute gives boards of supervisors power to adopt, modify, alter, or repeal orders, resolutions or ordinances with respect to county affairs, property, and finances as long as they are not inconsistent with state law. Section 19–3–40 is the sole derivative of the boards' authority to pass ordinances such as the ones at issue.

Miss.Code. Ann. § 19–3–40 grants the boards of supervisors the authority to pass ordinances with respect to county affairs, property, and finances as long as they are not inconsistent with state law. Mississippi cases uniformly hold that ordinances adopted by boards of supervisors which are *outside the powers granted to them by the Constitution or state statute are contrary to law and are prohibited. City of Jackson v. Freeman–Howie, Inc.,* 239 Miss. 84, 121 So.2d 120, 123–24 (1960).

The essence of the Noxubee County ordinance requires all new or pending hog farm owners or operators to obtain a permit from the Noxubee County Board of Supervisors. However, Miss.Code Ann. § 19–5–9 (general health, safety, & public welfare) proscribes boards of supervisors from requiring a county permit to build agricultural structures or operations. Therefore, the Noxubee County ordinance is inconsistent with state law. Since the ordinance is inconsistent with state law, passing the ordinance was outside the powers granted to them by the Constitution or state statute. Accordingly, there is a substantial likelihood that the Plaintiff would succeed on the merits against Noxubee County since the ordinance appears to be prohibited.

#### 2. Substantial Threat of Irreparable Injury to Plaintiff

Prestage Farms currently has letters of intent with applicants of pending permits with the Department of Environmental Quality in anticipation of fulfilling contractual obligations to prospective swine growers in Noxubee County as well as Bryan Foods, Inc., the largest pork processor in the State of Mississippi. With the ordinances now in effect, the DEQ will not begin the process of issuing the permits. Such a postponement of the permit process will prevent the Plaintiff from fulfilling its contractual obligations to Bryan Foods. Ron Prestage, President of Prestage Farms, Inc., testified that in order to meet his contractual obligations to Bryan Foods he must expand Prestage's swine business in Mississippi. If these ordinances are upheld, it will place Prestage Farms in breach of its contract with Bryan Foods. The irreparable harm test is met by the fact that Prestage Farms could have a possible breach of contract lawsuit filed against it by Bryan Foods, Inc. Prestage testified that his company had already expended over $40,-000,000.00 in the State of Mississippi after entering into a contract with Bryan Foods. Prestage further testified that he would suffer monetary damages of approximately $1,000,000.00 per year if the ordinances are not nullified.

Defendant Noxubee County directs this courts attention to cases opining that a

preliminary injunction is an inappropriate remedy where the potential harm to the movant is strictly financial. However true, an exception exists "where the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood Turnkey Drilling, Inc., et al. v. Petroleo Brasileiro, S.A.,* 875 F.2d 1174, 1178 (5th Cir.1989); *see also* Wright and Miller, Federal Practice and Procedure: Civil § 2948; *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir.1962) (abuse of discretion did not exist where denial in preliminary injunctive relief would eventuate the destruction of movant's business). "A judgment for damages, acquired years after [movant's] business has been obliterated would not be a meaningful remedy." *Atwood,* 875 F.2d at 1178.

### 3.   Harm to Defendant

The only proof the defendant counties submitted at the hearing was the existence of the odor problem. However, the record is void of any competent testimony as to the health and safety of the citizens of each county. Prestage Farms, on the other hand, provided a comprehensive study conducted by experts and furnished to the DEQ which found no harmful effects on humans from hog farm operations. The DEQ is now and has for years regulated the swine industry. Therefore, enjoining the enforcement of the ordinances will do little injury to the Defendants.

### 4.   Public Interest

The fourth element necessary to meet the plaintiff's burden of proof as to the requested injunction is establishing that no public interest will be disserved. The DEQ protects the public interest. It is this entity which has the scientific and technical expertise to regulate the swine industry. Again no proof was put on as to how the public as a whole would be disserved by granting the injunction. In fact, to deny the injunctive relief for the plaintiffs could possibly result in a huge damage award against Noxubee County and this would in effect disserve the public interest. This court also notes that a trickle down effect would occur on the individual farmers and their employees, as well as the citizens of this state who work for Prestage Farms.

### B.   Chickasaw and Monroe County Ordinances

Since the ordinances in Chickasaw County and Monroe County are practically identical, the court will address them together. In so doing, the court will address the Chickasaw ordinance as it relates to both the Prestage Farm claim and the Hill and Gore claim. The Chickasaw and Monroe ordinances do not require permits; however, they require that all hog farms be at least (A) 3 miles from the city limits; (B) 1.5 miles from any residential dwelling, unless waiver of consent by resident; (C) 1 mile from any river, stream, creek, or tributary; and (D) .5 mile from any adjacent property, unless waiver of consent by property owner.

### 1.   A Substantial Likelihood of Success on the Merits (Prestage Farm Claim and Hill & Gore Claim)

To prevail on their motions for the preliminary injunction, the Plaintiffs must demonstrate a substantial likelihood of success on the merits of their claims. The Plaintiffs first argue that the county ordinances are preempted by the regulations promulgated by the Mississippi Department of Environmental Quality and adopted by the Commission on Environmental Quality. The Commission on Environmental Quality was granted power by the legislature to adopt regulations to control air and water pollution. *See* Miss.Code Ann. §§ 49–2–9, 49–17–17. The Commission adopted the "Wastewater Regulations for National Pollutant Discharge Elimination System (NPDES) Permits Underground Injection Control (UIC) Permits, State Permits, Water Quality Based Effluent Limitations and Water Quality Certification." As stated in the opening paragraph of the court's opinion, Senate Bill 2895 (amending Miss.Code Ann. § 49–17–29) neither increased nor decreased the authority of boards of supervisors prior to June 1, 1998; therefore, the boards of supervisors were operating within the authority granted by the laws and regulations in place prior to June 1, 1998. Section C(2)(c) of the Commission's Wastewater Regulations was in effect prior to June 1, 1998. This regulation addresses distances between concentrated

animal operations and both occupied dwellings and adjacent properties. Since the authority of the boards of supervisors was subject to this regulation, the court finds that there is a substantial likelihood that the Plaintiffs would succeed in arguing that the regulation preempts the 1.5 mile residential dwelling restriction and the .5 mile adjacent property restriction.

Secondly, the Plaintiffs aver that the Chickasaw and Monroe ordinances violate their substantive due process rights. Substantive due process requires not only that the ordinance serve a public purpose, but also that the means adopted be reasonably necessary to accomplish that purpose and that the regulation cannot be unduly oppressive. *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). The location restrictions of the ordinances ban any hog farm operation within three miles of the city limit. Therefore, there is a three mile protective perimeter around all municipalities in Chickasaw and Monroe counties. The restriction that requires one-half mile from any adjacent property effectively requires a hog farm property owner to own property over one mile in diameter. Furthermore, the hog farm owner must make sure that this square mile places the hog farm in a position that is at least one mile from any river, stream, creek, or tributary. Additionally, all hog farms must be at least 1.5 miles from any residential dwelling. As testimony in the preliminary injunction hearing revealed, this restriction alone could require a hog farm owner to own nine square miles of property to be in compliance with the ordinance. In light of these location restrictions, the court finds that there is a substantial likelihood that the ordinances would be determined unduly oppressive and in violation of the Plaintiffs' substantive due process rights.

*2. Substantial Threat of Irreparable Injury to Plaintiff, Harm to Defendant, and Public Interest as to Prestage Farms*

The evidence submitted at the September 25, 1998, hearing as to all counties was substantially the same. Therefore, as to irreparable injury, harm to defendant, and public interest, this court finds that the reasons set forth in the section pertaining to Noxubee County are the same for Monroe and Chickasaw Counties.

*3. Substantial Threat of Irreparable Injury to Plaintiff, Harm to Defendant, and Public Interest as to Hill and Gore*

Plaintiffs William B. Hill and Samuel T. Gore meet the requirements for the issuance of a preliminary injunction as established in *Canal Authority.* Plaintiff Hill testified as to the large investment he had in his hog farm, the loss of income of approximately $10,0000.00 per month and the irreparable injury he would suffer if he is not permitted to proceed with his expansion. He testified that he purchased land for the very reason of constructing a hog farm and borrowed money from financial institutions to do so. Most importantly, he testified that if immediate relief is not granted, he and Plaintiff Gore will be foreclosed upon or forced into bankruptcy. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (threat of bankruptcy constitutes irreparable harm); *John B. Hull, Inc. v. Waterbury Petroleum,* 588 F.2d 24 (2nd Cir. 1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979) (possibility of going out of business is irreparable harm).

Again, the same reasoning is employed by this court in considering the damage the injunction might cause the counties and the public interest issue. This court is of the opinion that the granting of the injunction will not disserve the public interest and that the threatened injury to the Plaintiffs outweighs any damage it might cause the counties.

In sum, this court finds that the motions for preliminary injunction should be granted. A separate order in accordance with this opinion shall issue this day.

## ORDER GRANTING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

Pursuant to a memorandum opinion issued this day, it is hereby ORDERED that

(1) the Plaintiffs' motions for preliminary injunction are GRANTED;

(2) the counties shall not enforce the ordinances in question until a final determination on the merits; and

(3) plaintiffs may proceed with the application process as required by the Mississippi State Commission on Environmental Quality, the Mississippi Department of Environmental Quality, and the Mississippi Environmental Quality Permit Board.

All memoranda, depositions, declarations, and other materials considered by the court in ruling on these motions are hereby incorporated into and made a part of the record in this action.

SO ORDERED.